**Stephen F. HEFNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05-85-01211-CR.**

Court of Appeals of Texas, Dallas.

July 27, 1987.

R.J. Hagood, Denison, for appellant.

Jonathan H. Kamras, Sherman, for appellee.

Before STEPHENS, McCLUNG and ROWE, JJ.

STEPHENS, Justice.

Stephen F. Hefner was convicted by a jury of theft of $750 or more but less than $20,000. The jury assessed punishment at ten years' confinement and recommended to the court that the sentence be probated. The trial court probated Hefner's sentence and, as a condition of Hefner's probation, ordered that Hefner pay $35,500 in restitution to the Grayson County Attorney's office. Hefner asserts fourteen points of error on appeal. Hefner argues that the trial court erred: (1) by including in the charge to the jury a definition not supported by the evidence; (2) in ordering appellant to pay $35,500 in restitution; (3) in overruling appellant's motion for an instructed verdict; (4) in refusing appellant's request for a mistrial; (5) by entering a judgment of conviction because the evidence is insufficient to support the conviction; (6) in failing to require the State to elect the theory relied upon regarding the complainant's lack of effective consent; (7) in allowing the court reporter to read back testimony; (8) in admitting a particular letter into evidence; (9) in refusing to give a limiting instruction regarding the letter the trial court admitted into evidence; (10) in failing to charge the jury on the defense of mistake of fact; (11) in failing to charge the jury on the defense of mistake of law; (12) in failing to instruct the jury that under the Disciplinary Rules of the State Bar of Texas, a lawyer may advance a good faith claim for the extension, modification, or reversal of existing law; (13) in failing to instruct the jury that an attorney, under the Disciplinary Rules of the State Bar of Texas, shall not fail to carry out a contract for employment entered into with a client for professional services; and (14) because the evidence is insufficient to support the conviction. We agree with Hefner's second point of error; accordingly, we order that the probation order be modified to reflect

that Hefner, as a condition of probation, pay restitution of $20,000 to the Grayson County Attorney's Office. We disagree with each of Hefner's remaining points of error. Consequently, we affirm the judgment of the trial court as modified.

The evidence is undisputed that the complainant brought $67,000 to Hefner's office on April 5, 1984. Hefner's law firm was, at that time, representing the complainant in simultaneous civil ligation against complainant's children in state and federal courts. The suits between complainant and her children centered upon the administration of complainant's husband's estate and testamentary trust. The state court, sitting in probate, ordered the complainant to deliver certain assets into the registry of the court. It is unclear whether the order included the $67,000 complainant brought to Hefner's office, but evidently complainant assumed that it did. Complainant brought $54,000 in cash, and $13,100 in countersigned travelers checks to Hefner's office, apparently in an attempt to avoid the court order, which complainant perceived as her children's attempt to obtain her money. Hefner, or Hefner's office manager, accepted the $67,000 from complainant.

A receipt for the $67,000, which was entered into evidence, contains the following handwritten notation signed by Hefner, "Received of [complainant] as her property to be held for safekeeping & subject to her direction." Hefner testified that the complainant gave him the money "for *safekeeping*" (emphasis added). Hefner immediately deducted $7,500 from complainant's cash and had that amount deposited in the law firm's operating account "for services rendered and to be rendered", on the state and federal suits. Complainant received a receipt for the $7,500 to that effect. The following day Hefner had a limousine take an employee and the remaining $59,500 in cash and travelers checks to Oklahoma City, where the money was placed in a safety deposit box rented in his office manager's sister's name.

Despite Hefner's agreement to hold complainant's money in safekeeping subject to her direction, on various occasions Hefner's employees went to Oklahoma City and removed quantities of complainant's money from the safety deposit box; drove to Dallas with complainant's money, and bought cashier's checks payable to Hefner or Hefner's law firm; and then deposited the cashier's checks in Hefner's law firm's operating account. The total amount of the checks deposited to this account was at least $40,000. Hefner's office manager testified that either prior to or subsequent to all but the last transfer of money from the safety deposit box to the firm's operating account, she discussed the transfer with complainant. She also testified that during these discussions she wasn't sure she was "getting through" to complainant. By June 6, a mere two months after Hefner received the $67,000 from complainant, handwritten records of the law firm show that only the $13,100 in travelers check remained in the Oklahoma City safety deposit box.

After two of the transfers, complainant was given a portion of the sum withdrawn from the Oklahoma City safety deposit box. Also, on several occasions, complainant received handwritten receipts from Hefner's office manager indicating that her bill with Hefner's law firm had been credited. The receipts given complainant by Hefner's office manager totaled $21,100 (plus the initial $7,500 receipt). At least once, money was transferred from the Oklahoma City safety deposit box to the Hefner firm's operating account via the bizarre route set forth above and complainant was given no receipt at all. Nor was said transfer "discussed" with complainant by Hefner's office manager.

In August, complainant filed motions in both state and federal courts to replace Hefner's law firm with another attorney. Although the motion in federal court was still pending at the time of Hefner's trial, the state court granted the motion presented to it. Not long thereafter, an attorney for complainant's children located and seized the contents of the safe deposit box pursuant to a court order. When the children's attorney seized the box, it contained only $13,100 in traveler's checks. After

this discovery, Hefner received a letter from complainant's substituted counsel demanding the return of $48,900, the amount of cash which it was claimed that Hefner still held in trust for complainant. Hefner refused to return the money on the ground that complainant's substituted counsel had no authority to act for complainant because the appointment was void as the court had no jurisdiction. The complainant herself then demanded the return of the cash in a letter addressed to appellant delivered to his law firm via certified mail. Appellant did not respond to complainant's demand, and the present prosecution ensued.

■ In his first point of error, without citing any cases in support of his position, Hefner argues that the trial court erred in including the underlined portion of the following instruction in the charge:

"Consent" means assent in fact, whether express or apparent.

The term "effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if:

1. Induced by deception or coercion:
2. Given by a person who by reason of mental disease or defect, is known by the actor to be unable to make reasonable property dispositions.

The record reflects that Hefner made a proper, timely objection to the inclusion in the charge of the above underlined portion of the instruction on the basis that the objectionable portion of the instruction was not supported by the evidence. We disagree with Hefner's contention.

The charge should instruct the jury as to the law applicable to every theory within the scope of the indictment which is established by the evidence. *Rider v. State*, 735 S.W.2d 291, 293 (Tex.App.—Dallas 1987); *Goodwin v. State*, 694 S.W.2d 19, 27 (Tex. App.—Corpus Christi 1985, pet. ref'd); *see also Cantu v. State*, 170 Tex.Cr.R. 375, 341 S.W.2d 451, 452 (Tex.Crim.App.1960). Hence, if complainant's ineffective consent was raised by the evidence, the trial court properly included the above ineffective consent instruction in its charge to the jury.

Hefner, at trial, did not contest the fact that the law firm's employees had taken complainant's cash and deposited it for credit to the firm's operating account. Neither did Hefner contest the fact that he authorized his office manager to oversee the arrangements resulting in the transfers. Hefner, instead, admitted the above facts but defended on the theory that the complainant manifested her consent to the transfers as payments against the firm's legal fees. In support of this theory Hefner relied on the hand-written receipts executed by the office manager and given to complainant, indicating that the firm had received a total of $21,200 from the complainant for "services rendered." Hence, whether complainant effectively consented to the transfers was the primary fact issue at trial. Clearly the issue of effective consent was raised by the evidence. Therefore, the trial court did not err in including the complained of definition.

Furthermore, the definition of which Hefner complains substantially tracks the Penal Code definition. The statutory definition of "effective consent" is set forth below:

(4) "Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if:

(A) induced by deception or coercion;

(B) given by a person the actor knows is not legally authorized to act for the owner;

(C) given by a person who by reason of youth, mental disease or defect, or intoxication is known by the actor to be unable to make reasonable property dispositions; or

(D) given solely to detect the commission of an offense.

TEX.PENAL CODE ANN. § 31.01 (Vernon 1974). Comparing the complained of definition in the charge with the above Penal Code definition, it is clear that the charge's second definition of ineffective consent tracks the Penal Code definition, with the exception of omitting the words "youth" and "intoxication." These words were omitted by the trial court at Hefner's re-

quest. Hefner did not object to the trial court's omission of Penal Code subsections (B) and (D) from the court's charge. Nor did Hefner object to the inclusion of Penal Code subsection (A) in the charge. In summary, lack of effective consent was raised by the evidence and therefore, the trial court's inclusion in the charge of definitions of when consent is ineffective, was proper. Likewise, the actual wording of the definition was proper. *See* TEX.PENAL CODE ANN. § 31.01(4) (Vernon 1974).

Since we hold that the trial court *did not err* in including in the charge, over Hefner's objection, one of the statutory definitions of ineffective consent, we will not proceed with an *Almanza* [1] harm analysis. Hefner's first point of error is overruled.

In his second point of error, again without any supporting authority, Hefner argues that the trial court erred in ordering that, as a condition of his probation, he pay $35,500 in restitution because $35,500 exceeds the amount that the jury found Hefner had taken from complainant. A trial court's order of restitution as a condition of probation will not be overturned absent an abuse of discretion. *See Cartwright v. State,* 605 S.W.2d 287, 289 (Tex.Crim.App. 1980); *Collins v. State,* 701 S.W.2d 275, 277 (Tex.App.—Dallas 1985, no writ). Although the decision *whether* to order restitution as a condition of probation is within the discretion of the trial court, the record must contain evidence to show that the dollar amount set by the court has a factual basis. *See Cartwright,* 605 S.W.2d at 289; *Thompson v. State,* 557 S.W.2d 521, 525–26 (Tex.Crim.App.1977); *accord Rodriguez v. State,* 710 S.W.2d 167, 169 (Tex. App.—San Antonio 1986, pet. ref'd). The record in the case at bar does contain a factual basis for the trial court's including, as a condition of Hefner's probation, a requirement that Hefner pay $35,500 in restitution. The record before us contains undisputed evidence that complainant brought $67,000 to Hefner's office on April 5, 1984,

for "safekeeping", and that by June 6, 1984, only $13,100 remained in the Oklahoma City safety deposit box. Therefore, there is a factual basis from which the trial court could determine that $35,500 was approximately the amount required to "make this victim whole." *See Cartwright,* 605 S.W.2d at 288.

However, in *Gordon v. State,* 707 S.W.2d 626, 628–30 (Tex.Crim.App.1986), the jury found Gordon guilty under one paragraph of the charge of pulling the decedent's hair, but acquitted him under another paragraph of the charge of causing decedent's death. Nonetheless, the trial court ordered Gordon as a condition of his probation, to pay for decedent's funeral expenses. The Court of Criminal Appeals stated:

> To allow the trial court to order appellant to pay the expenses occasioned by a crime for which the jury had found him not responsible would be a similar circumvention of the jury's verdict. It would allow punishment to be imposed for a crime of which appellant was acquitted.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> We hold that the trial court was without authority under Article 42.12, § 6(a) to order appellant to make restitution for losses caused by an offense for which the jury had found he was not criminally responsible.

*Gordon,* 707 S.W.2d at 629, 630.

In the case at bar, the charge to the jury set forth five theft paragraphs, one paragraph for each of five different dates on which money was transferred from the safety deposit box to Hefner's firm's operating account. The charge then instructed the jury:

> If you have found the Defendant guilty beyond a reasonable doubt of any acts or theft and you further find beyond a reasonable doubt that said acts, if any, were part of one scheme or continuing course of conduct, and that the aggre-

---

1. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1984) requires that if there *is* an error in the charge, and the defendant timely and properly objected to the error, then on appeal,

the appellate court must determine whether the defendant suffered "some harm" as a result of the error in the charge.

gate amount of money obtained as a result of those thefts, if any, was over $20,000.00, then you will find the Defendant guilty of second degree felony theft. If you do not so believe or you have a reasonable doubt thereof, you will find the Defendant not guilty of second degree felony theft and consider whether or not he is guilty of the lesser included offense of theft over $750.00 and under $20,000.00, a third degree felony.

If you have found beyond a reasonable doubt that Defendant was guilty of one or more of the acts previously described, but was not guilty of one or more of said acts, and that the aggregate amount of the money obtained as a result of the acts you have found the Defendant guilty of beyond a reasonable doubt, if any, was more than $750.00 but less than $20,000.00, then you will find the Defendant guilty of third degree felony theft.

The jury was given the following verdict form, and answered it as set forth below:

## VERDICT

We, the Jury, find the Defendant, Stephen F. Hefner, not guilty.

---

Foreman

We, the Jury, find the Defendant, Stephen F. Hefner, guilty of theft over $20,-000.00, as charged in the Indictment.

---

Foreman

We, the Jury, find the Defendant, Stephen F. Hefner, guilty of Theft Over $750.00 and under $20,000.00.

/s/ Foreman of the Jury

Foreman

Therefore, it is clear that the jury in the present case acquitted Hefner of theft of over $20,000. Accordingly, under the Court of Criminal Appeals' pronouncement in *Gordon*, the trial court's order that Hefner pay $35,500 in restitution as a condition of his probation cannot stand. Hefner's second point of error is sustained.

Typically, the absence of a factual basis supporting the dollar amount of restitution awarded by the trial court, appellate courts remand the cause to the trial court for a

hearing to determine a just amount of restitution. *See Cartwright*, 605 S.W.2d at 289; *Thompson v. State*, 557 S.W.2d at 526; *Allen v. State*, 707 S.W.2d 670, 672 (Tex.App.—Houston [1st Dist.] 1986) (for disposition following abatement, *see Allen v. State*, 720 S.W.2d 618 (Tex.App.—Houston [1st Dist.] 1986)). In the present case, there is a factual basis in the *record* to support the trial court's restitution order. However, the *verdict* and the *judgment* in the present case indicate that Hefner was acquitted of the offense of theft of greater than $20,000. Accordingly, the trial court abused its discretion in ordering restitution in an amount greater than $20,000.

However, since there is a factual basis in the record for the trial court's restitution order, no purpose would be served by remanding the cause to the trial court for a hearing on the amount of restitution which would be just. Consequently, we hold that the order of probation is modified by striking the requirement that Hefner make restitution in the amount of $35,500 and substituting the requirement that Hefner, as a condition of probation, make restitution in the amount of $20,000. Such restitution shall be made, in accordance with the trial court's order, in monthly installments of $300 until $20,000 has been paid. Each monthly payment is due on or before the tenth day of the month, commencing in the month Hefner's probationary period begins. *See Rodriguez v. State*, 710 S.W.2d at 169.

■ In his third point of error, citing only one case, Hefner complains that there was a fatal variance between the indictment and the evidence presented by the State and that, therefore, the trial court erred in overruling his motion for a directed verdict. Hefner argues that the indictment names himself, Stephen F. Hefner, as the person who committed the crime; while the evidence offered by the State proved that the offense, if any, was committed by Stephen F. Hefner & Associates, a Texas Professional Corporation. We disagree with Hefner's contention.

The current Penal Code abolishes the former legal distinction between principals

and accomplices, so the State is no longer required to allege whether the accused was only guilty as a party. *See Aston v. State,* 656 S.W.2d 453, 455–56 (Tex.Crim.App. 1983). An indictment alleging that the accused committed an offense may be supported with evidence that he was only guilty as a party to the offense. *Pitts v. State,* 569 S.W.2d 898, 900 (Tex.Crim.App. 1978) (en banc). Undoubtedly, the record presently before this court does not indicate that Hefner personally engaged in any overt conduct constituting an appropriation of complainant's funds from the Oklahoma bank or their transfer to the firm's bank in Dallas. Nevertheless, it is replete with testimony, including Hefner's, that he orchestrated each transfer, instructing the office manager concerning the amount of funds to be obtained on each occasion and the manner in which they were to be channelled to the firm's bank account.

Under the provisions of Texas Penal Code section 7.02, Hefner was criminally responsible for the conduct of his employees to the same degree as if he had personally engaged in that conduct, if he intended to deprive the owner of the money, or if he intended to promote or assist the employees in the commission of a theft. *See* Tex. Penal Code Ann. § 7.02(a)(1), (2) (Vernon 1974); *see also* Tex.Penal Code Ann. § 31.-03(a) (Vernon Supp.1987) (requisite mental culpability for offense of theft is intent to deprive).

Further, section 7.23 of the Penal Code provides that "[a]n individual is criminally responsible for *conduct* that he performs ... in behalf of a corporation ... to the same extent as if the conduct were performed in his own name or behalf." Tex. Penal Code Ann. § 7.23(a) (Vernon 1974) (emphasis added). As we understand Hefner's argument, he reads "conduct" to include only overt acts of conversion or appropriation. This contention overlooks the fact that, under the Penal Code, speech and other bodily movements constitute "conduct." Tex.Penal Code Ann. § 1.07(a)(1), (8) (Vernon 1974). Thus, by "instructing"

the law firm's office manager concerning the manner in which the other employees were to obtain complainant's money and deposit it in the firm's bank account, Hefner necessarily engaged in "conduct" sufficient to satisfy the requisites of section 7.23. If the evidence was sufficient to prove that Hefner directed these activities with the requisite degree of mental culpability[2], then the indictment did not vary from the evidence merely because it may have shown that the corporation could also have been guilty of the offense in question. The trial court did not err in overruling appellant's motion for a directed verdict because the motion rested on the contention that appellant could not be held personally responsible for acts committed on behalf of the law firm or that appellant could not have been convicted as a principal under the former law of principals and accomplices. *See e.g. Maxwell v. State,* 509 S.W.2d 338 (Tex.Crim.App.1974) (taking by an innocent employee at direction of supervisor acting with intent to fraudulently deprive the owner was theft by the supervisor). Hefner's third point of error is overruled.

In his fourth point of error, Hefner argues that the trial court committed reversible error in overruling his motion for a mistrial after the prosecutor violated a motion in limine granted by the trial court. Prior to the commencement of jury selection, the trial court granted Hefner's motion in limine which prohibited the State from informing the jury, during the guilt/innocence phase of the trial, that Hefner had filed his application for probation. Hefner fails to indicate where in the statement of facts the prosecutor's alleged violation of the motion in limine occurred. We have carefully reviewed the entire transcription of the jury voir dire, and we find no comments or arguments by the prosecutor violating Hefner's "motion to prohibit mentioning defendant's application for probation." The record before us is void of any reference to Hefner's *application* for

---

**2.** To avoid redundancy, we shall consider whether the evidence was sufficient with respect to intent in connection with our discussion of

appellant's challenge to the sufficiency of the evidence.

probation. Therefore, Hefner's fourth point of error is overruled.

Hefner's fifth point of error states:

The evidence is insufficient to support a judgment of conviction as the State failed to totally prove that the controversy between the complainant and appellant amounted to anything more than a civil fee dispute.

Hefner's fourteenth point of error likewise attacks the sufficiency of the evidence to support his conviction. Hefner's fourteenth point of error alleges that "the evidence is insufficient as a matter of law to show any penal violation occurred within the State of Texas." Since both Hefner's fifth and fourteenth points of error challenge the sufficiency of the evidence, we will address these points together.

■ In accordance with *Van Guilder v. State*, 709 S.W.2d 178, 179 (Tex.Crim.App. 1985) (en banc), we have reviewed the record in the light most favorable to the verdict, limiting our inquiry to whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. We hold that the evidence is sufficient to support Hefner's conviction. The Texas Penal Code provides:

§ 31.03. Theft

(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.

(b) Appropriation of property is unlawful if:

(1) it is without the owner's effective consent;

Tex.Penal Code Ann. (Vernon Supp.1987).

As we have already noted with respect to Hefner's third point of error challenging the trial court's refusal to grant a directed verdict, the evidence leaves no doubt that Hefner caused the appropriation of complainant's funds. Thus, we now turn to determine whether the evidence was sufficient to show that Hefner acted with the necessary mental culpability to render him criminally responsible. Applying section 7.02 to the present case, the State was required to prove either: (1) that Hefner acted with intent to deprive; or (2) that he acted with intent to promote or assist the commission of the offense. *See* Tex.Penal Code Ann. § 7.02(a)(1), (2) (Vernon 1974).

Assuming arguendo that the State was burdened with proving intent to deprive— that is, to withhold the property permanently or for so long as to destroy the majority of its value to the owner, Tex.Penal Code Ann. § 31.01(3) (Vernon 1974)— we conclude that a rational trier of fact could have found beyond a reasonable doubt that Hefner acted with that intent. Hefner testified that the law firm acquired complainant's money in payment of its legal fees. If the jury accepted Hefner's explanation of his motive for arranging the transfer of the money, then it logically follows that he did not intend to return the money to the complainant. If, however, the jury disbelieved this explanation of Hefner's motive, then it could have inferred his intent from the manner of the transfer and his refusal to return any of the money when it was demanded by complainant. Both indicate that, if Hefner did not arrange the acquisition in payment of the firm's fees, he intended to place the money within the control of the law firm without the intent to return it to complainant.

Next, we must determine whether the evidence was legally sufficient to show that complainant did not give effective consent. Complainant's testimony was sometimes inconsistent in that she maintained that she never consented to the transfers but admitted that she knew that several had occurred and, on two occasions, she had received receipts from the firm's office manager acknowledging that the firm had obtained a total of $21,200 (plus the initial deduction of $7,500). Nevertheless, she claimed that she protested each known transfer with complaints that the firm was overcharging her.

The office manager testified that before all but the last transfer of $5,800 in June of 1984, either she or Hefner informed complainant that more money was needed as attorney's fees. However, with respect to the issue of consent to that final transfer, we have only complainant's testimony that she was not informed of, nor consented to

such transfer. Hefner testified that he entertained no doubt that complainant "understood" that this $5,800 was also being used to pay his firm's fees. Resolving this conflicting testimony in favor of the verdict, the evidence is sufficient to support Hefner's conviction. There is evidence from which a rational trier of fact could find Hefner guilty beyond a reasonable doubt. We point out that even if the jury believed complainant consented to the transfers for which she received a receipt, (although complainant testified that she did not consent to such transfers), nonetheless, complainant undisputedly did not receive a receipt for the last transfer of $5,800. Likewise, in regard to this last transfer, unlike the prior transfers, Hefner's office manager was unable to testify that she had discussed this withdrawal with complainant. The evidence is sufficient to support Hefner's conviction for theft of more than $750 but less than $20,000. Since we have found that the evidence that Hefner acted with intent to deprive was sufficient, we will not address whether the evidence was sufficient to prove Hefner acted with the intent to promote or assist the commission of the offense. Hefner's fifth and fourteenth points of error are overruled.

■ In his sixth point of error, Hefner contends that the trial court erred in overruling his motion requesting that the State elect under which theory of ineffective consent set forth in section of § 31.01(4) it would proceed. The law is well-settled, and Hefner concedes in his brief, that the State is not required to specify in the indictment the type of "ineffective consent" it relies upon. *See Thomas v. State*, 621 S.W.2d 158, 160–64 (Tex.Crim.App.1980) (on rehearing); *Cashion v. State*, 657 S.W.2d 517, 520 (Tex.App.—Corpus Christi 1983, pet. ref'd); *Chavez v. State*, 642 S.W.2d 59, 62 (Tex.App.—El Paso 1982, no writ). Hefner argues that since, in the case at bar, there was evidence of some type of consent, effective or ineffective, and since he may have been acting under a mistake of fact, the due process clauses of the Sixth and Fourteenth Amendments to the United States Constitution require that he be given notice regarding which theory

of ineffective consent the State would rely upon. We disagree; the case at bar falls squarely within the well-settled law. The State was not required to disclose which theory of ineffective consent it would proceed upon. *See Thomas*, 621 S.W.2d at 160–64; *Cashion*, 657 S.W.2d at 520. The trial court did not err in overruling Hefner's motion. Hefner's sixth point of error is overruled.

■ Hefner's seventh point of error complains that "the trial court committed reversible error in allowing the court reporter to read back testimony concerning the return of money from Dr. Robert Gordon to appellant."

Dr. Gordon, a forensic and clinical psychologist and a member of the State Bar of Texas, began seeing complainant as a patient on April 13, 1984. Gordon testified that complainant was referred to him by Hefner and another attorney. Gordon saw complainant weekly until July 16, 1984, for psychotherapy sessions. During one of the sessions Gordon concluded that complainant had been paying him with funds which he understood were being searched for by the federal court in Sherman. Consequently, Gordon sent a letter to Hefner and enclosed a check for $1,760. The letter indicated that Gordon was returning all of the money paid to him by complainant, with the exception of $360 which came from complainant's rental income, because he believed such monies were subject to a federal court's order.

The jury, during their deliberations, sent the following note to the judge:

Let it be known that the jury is in dispute on certain points concerning the return of $1,760 from Gordon to Mr. Hefner, on or about May 31, 1984. Therefore, we request a reading of any testimony concerning such transaction.

Specifically, we request a reading of excerpts from the testimony of Steve Hefner, M.D. Bader, Emily Allmon, and Dr. Robert Gordon, concerning the above-stated dispute.

Respectfully, /s/[Jury Foreperson]

Hefner argues that the jury's note did not meet the requirements of Article 36.28 of the Texas Code of Criminal Procedure which provides in pertinent part:

> In the trial of a criminal case of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other. . . .

TEX.CODE CRIM.PROC. (Vernon 1981). Hefner contends that the jury's note did not indicate what particular point was disputed and that therefore, the trial court should have refused to allow the court reporter to read any portion of any witness' testimony to the jury. We disagree for two reasons. First, the statement of facts does not indicate what testimony was read to the jury. The statement of facts simply states:

> THE COURT: Bring the jury in. (Whereupon, the jury was returned into open court at 1:37 p.m., at which time the requested portions of testimony were read to them, after which time the jury was retired at 1:45 p.m. to continue their deliberations.)

Hence, we are unable to determine whether the testimony read to the jury complied with Article 36.28. Second, Hefner has waived any error or noncompliance with Article 36.28 because he failed to lodge a *proper* objection. Hefner did request that "in addition to allowing this [the exerpts requested by the jury] to be read, we request that the court further advise the jury that such sum of $1,760 cannot be used as the basis for any conviction, for the reason that the indictment alleges dates and amounts." This request, even if it is construed as an objection, is not sufficiently specific to preserve error. *See Thomas v. State*, 624 S.W.2d 296, 297 (Tex.Civ.App.—Dallas 1981, no writ). Accordingly, Hefner's seventh point of error is overruled.

■ In his eighth point of error, Hefner asserts that the trial court erred in allowing Dr. Gordon's letter to be introduced into evidence because the letter "was a misstatement of facts and the conclusion of the witness, thereby invading the province of the jury." Hefner cites no authority for this proposition. Hefner contends that since the record "is void of [Gordon's] ever having a copy of any court order requiring the return of such funds", that "the conclusion reached by Dr. Gordon that he ought to returned [sic] the funds and allowing the jury to consider the conclusion invaded the province of the jury and was prejudicial to the Defendant." Although Hefner's eighth point of error focuses on Gordon's letter, his argument in support of his point of error complains of Gordon's testimony. In either case, Hefner has failed to preserve any error. The record reflects that Hefner objected to the introduction of State's exhibit number 12, Gordon's letter to Hefner, outside the presence of the jury, on the grounds that "any opinion he [Gordon] would give as to the reason as to the return [of complainant's money to Hefner] has not been established." However, when Gordon testified as follows, Hefner failed to object:

> Q. And how were you paid for your services?

> A. I presume that I was paid in the ordinary course of payment according to our office procedure, which is that the patient would pay for her or his charge at the conclusion of the visit.

> Q. So she was paying you?

> A. Yes, sir.

> Q. Sometime during the course of your consultations with her and treatment of her, did you have occasion to become aware of certain factors involved in Grayson County, Texas?

> A. Yes, sir.

> Q. And based upon that, did you take some action with regard to the monies that she had paid you?

> A. Yes, sir.

> Q. And what was that action?

> A. I determined from [complainant] in a surprising psychotherapy visit, that she has paid me with funds which it was my understanding that the court was searching for.

> Q. The court in Grayson County, Texas?

A. Yes, sir.

In comparison, the letter from Gordon to Hefner is set forth in its entirety below:

Dear Mr. Hefner:

This morning during a psychotherapy visit, [complainant] told me that she had paid for most of my services with funds that the Federal Court in Sherman is searching for. Attached please find my check in the amount of $1,760 which represents all fees paid to me by [complainant] except for $360 which she stated was paid from her rental income.

Sincerely yours,

/s/ Dr. Robert Gordon

Hefner objected to the introduction into evidence of the above letter, State's exhibit number 12. However, Hefner failed to object to Gordon's testimony regarding the return of his fees to Hefner. It is well settled that an error in admission of evidence is cured where the same evidence comes in elsewhere without objection; defense counsel must object every time allegedly inadmissible evidence is offered. *Hudson v. State*, 675 S.W.2d 507, 510–11 (Tex.Crim.App.1984) (en banc); *see Sapien v. State*, 705 S.W.2d 214, 217 (Tex.App.—Texarkana 1985, pet. ref'd). Even if the trial court erred in admitting State's exhibit number 12 into evidence, such error has not been preserved. Hefner's eighth point of error is overruled.

Hefner argues in his ninth point of error that the trial court erred in refusing to instruct the jury after portions of Gordon's testimony were read to the jury during their deliberations. Hefner requested that "the court further advise the jury that such sum of $1,760 cannot be used as a basis for any conviction, for the reason that the indictment alleges the dates and the amounts." Hefner concedes in his brief that, "while the introduction of State's exhibit 12 was not introduced to show [sic] extraneous offense when it became apparent to the State [sic] and to the Appellant that the jury was obviously considering the return of the money as such an offense, the Trial Court was under an obligation and duty to give such a limiting instruction and the Court's failure to do so resulted in

great and prejudicial harm to Appellant." We disagree with this contention.

As previously discussed, Hefner did not object to Dr. Gordon's testimony regarding his return of complainant's money to Hefner. Neither did Hefner request a limiting instruction concerning Gordon's testimony. Furthermore, Hefner did not request a limiting instruction at the time State's exhibit number 12 was introduced. Hefner cites no authority, and we are unaware of any precedent allowing a defendant to request a limiting instruction after portions of testimony have been read to the deliberating jury under Article 36.28 of the Texas Code of Criminal Procedure. If Hefner desired a limiting instruction, and had one been proper, he should have requested and received one at the time the evidence was introduced. Where evidence is admissible for a limited purpose only, and the court admits the evidence without limitation, the party opposing the offer has the burden of requesting the correct limiting instruction. *Plante v. State*, 692 S.W.2d 487, 493 (Tex.Crim.App.1985). Consequently, the evidence could properly be considered for all purposes due to Hefner's failure to request a limiting instruction at the time the evidence was introduced. The trial court did not err in refusing to give the instructions. Hefner's ninth point of error is overruled.

In his tenth point of error Hefner contends that the trial court erred in refusing to charge the jury on the defense of mistake of fact. We hold that Hefner's request for a special instruction on the mistake of fact defense was too general to preserve error.

Section 8.02 of the Texas Penal Code provides in pertinent part:

§ 8.02. Mistake of Fact

(a) It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.

TEX.PENAL CODE ANN. § 8.02 (Vernon 1974). Hefner requested the following special instruction:

It is a defense to prosecution that the Defendant, through mistake, formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for the offense of the offense.

Therefore, if you find or believe from the evidence, beyond a reasonable doubt, as that term is defined herein, presented by the evidence in the trial of this cause, that the Defendant committed the offense of theft, as alleged in the indictment; but you further find, or have a reasonable doubt thereof, that the Defendant, through mistake, formed a reasonable belief [sic] negated the kind of "reasonable culpability", as that term is defined in this charge, required for the commission of the alleged offense, then you will acquit the Defendant, and find the Defendant "Not Guilty", and by your verdict so state.

Hefner timely objected to the court's failure to include the above instruction in the charge. The instruction requested by Hefner fails to apprise the trial court of *what mistake of fact,* Hefner is relying upon. Hefner cannot simply request a general charge on mistake of fact and hope that the jury can magically ascertain what mistaken belief he formed.

In *Beggs v. State,* 597 S.W.2d 375 (Tex. Crim.App.1980), the Court of Criminal Appeals recited the relevant facts as follows:

The appellant and her step-daughter were charged with burning the appellant's granddaughter RMB in hot bathwater. The appellant admitted helping her step-daughter punish RMB by administering the bath which scalded RMB. Her defense was that she did not know that the bathwater was hot enough to cause injury, the water having been drawn by her step-daughter before the appellant came into the bathroom to help bathe RMB. She thought RMB was being given a normal bath. (According to the appellant, RMB so hated to bathe that a normal bath was punishment to her.) ... The appellant assigns as error

the trial court's instruction to the jury on the defense of mistake of fact.

597 S.W.2d at 376. The appellant in *Beggs* requested that the following instruction on mistake of fact be included in the court's charge:

It is a defense to this prosecution if the Defendant through mistake formed a reasonable belief about a matter of fact if her mistaken belief negated the kind of culpability required for the commission of the offense charged.

The Term "reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the Defendant.

Therefore, if you believe from the evidence beyond a reasonable doubt that the Defendant committed the acts alleged, but you further believe, or you have a reasonable doubt thereof, that, at the time of the alleged acts, she had through mistake formed a reasonable belief about a matter of fact *to-wit: that the water in question was not hot to the extent to cause serious bodily injury as that term has been heretofore defined,* and that said mistaken belief negated the culpability required for the commission of the offense, as stated in Paragraph 3 of this charge, you will find the Defendant not guilty.

But if you believe [sic] beyond a reasonable doubt that the Defendant had not through mistake formed a reasonable belief about a matter of fact, to-wit: that the water in question was not hot to the extent to cause serious bodily injury, or that such belief did not negate the kind of culpability required for the commission of [sic] the offense, as stated in Paragraph 3 of this charge, you will find against the Defendant on this defense.

597 S.W.2d at 378–79 (emphasis original). The trial court in *Beggs* refused to include appellant's requested instruction on mistake of fact in the charge. Instead, the trial court instructed the jury on the defense of mistake of fact in the following terms:

It is a defense to prosecution that the defendant through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.

Now, therefore, if you find and believe from the evidence beyond a reasonable doubt that the defendant committed the offense of injury to a child as alleged in the indictment, but if you further find, or have a reasonable doubt thereof, that the defendant through mistake formed a reasonable belief about a matter of fact which mistaken belief negated the kind of culpability required for the commission of the offense, you will acquit the defendant of the offense charged in the indictment and say by your verdict "not guilty."

By the term "culpability" as hereinbefore used is meant the culpable mental states as defined in Paragraphs 2(A) and 2(B) above.

597 S.W.2d at 378. The appellant in *Beggs* objected to the above instruction on the ground that "it fails to specify the mistake of fact alleged and testified to by the Defendant and replaces the same with a general definition of mistake of fact, thereby preventing the Jury from finding affirmatively on a defensive issue raised by the evidence." *Beggs*, 597 S.W.2d at 378. The Court of Criminal Appeals noted that the trial court's instruction on mistake of fact, set forth above, did not apply the law to the facts. The Court stated:

> The trial court's refusal to give a charge *that applied the law of mistake of fact to the very facts of the case,* over the appellant's objection and in the face of a properly requested charge, was reversible error.

597 S.W.2d at 380 (emphasis added).

The instruction on mistake of fact requested by Hefner is similar to the erroneous instruction given by the trial court in *Beggs* in that neither instruction applies the law of mistake of fact to the facts presented at trial. The Court of Criminal Appeals in *Beggs* held that a general instruction on the law of mistake of fact is improper; the

instruction should apply the law to the facts of the case.

Other cases dealing with the defense of mistake of fact involve situations in which the defendant requested an instruction that *did* apply the law to the facts. For example, in *Jackson v. State,* 646 S.W.2d 225 (Tex.Crim.App.1983) (en banc), the defendant, superintendent of schools, was charged with theft of $285.87 of school system funds from T.D. Davis, a member of the school board. Davis testified that the school board had, at a meeting, approved payment of current school system bills, which included $258.87 to Margarita Rodriguez for travel reimbursement. The checks, including one for $258.87 made payable to Margarita Rodriguez, were left with the defendant for distribution to the payees. Defendant cashed the $258.87 check. The defendant testified that he was a close friend of the Rodriguez family. Defendant testified that Margarita worked for the school system and traveled frequently on school business under the migrant program. Defendant testified that he believed Margarita was entitled to reimbursement for travel and that because the fiscal period was nearing its end, he filed the requisition for reimbursement on her behalf. Defendant then explained that the check was endorsed by Margarita's son and that he had cashed it at the son's request. The defendant in *Jackson* requested the following special instruction relating to mistake of fact:

> You are instructed that if you believe from the evidence that the Defendant, James Jackson, obtained the check number 620, if he did, in good faith, believing that there was a debtor-creditor relationship existing between the owner and one Margarita Rodriguez, then you will acquit the Defendant, James Jackson and say by your verdict, not guilty, or if you have a reasonable doubt thereof, you will acquit the Defendant.

646 S.W.2d at 226–27. The Court of Criminal Appeals held that "[a]lthough appellant's requested charge was not drafted in the language of Sec. 8.02, we find that it was sufficient to constitute a request for a defensive charge to which he was entitled."

In *Donald v. State*, 418 S.W.2d 818 (Tex. Crim.App.1967), the appellant asserted that the trial court erred in refusing his requested charge to the jury which had been timely and properly presented. The appellant requested the following charge:

> If you believe from the evidence that the defendant was induced into issuing the check in question by the offer on the part of La Gloria Oil and Gas Company or one of its representatives that he could give a check for oil and gas delivered to him and make the check good from the sale of the gas at a later date, knowing that defendant must pay for it in this manner, or if you have a reasonable doubt thereof, you will say by your verdict not guilty.

418 S.W.2d at 818. The Court of Criminal Appeals discussed the evidence presented at trial, and concluded:

> The appellant was entitled to an appropriate affirmative submission of the defense to the jury as raised by the above testimony, and the main charge did not submit it.

> The requested charge was sufficient to call the trial court's attention to the omission in the main charge and preserves the error. (citations omitted).

418 S.W.2d at 821.

In the case at bar, Hefner *did not* submit a proper request to the trial court for an instruction on mistake of fact. *See Beggs*, 597 S.W.2d 375 (Tex.Crim.App. 1980). Hefner's requested instruction on mistake of fact was *not* sufficient to call the trial court's attention to the omission in the main charge. In *Beggs, Jackson,* and *Donald,* each defendant requested an instruction that contained at least some facts sufficient to apprise the trial court of the defense relied upon. Hefner's request is improper because it does not apply the law to the facts and therefore fails to apprise the trial court of *what mistake of fact* Hefner is relying upon. Article 36.15 of the Texas Code of Criminal Procedure provides in pertinent part:

> Before the court reads his charge to the jury, counsel on both sides shall have a reasonable time to present written instructions and ask that they be given to the jury. The requirements that the instructions be in writing is complied with if the instructions are dictated to the court reporter in the presence of the court and the state's counsel, before the reading of the court's charge to the jury. The court shall give or refuse these charges. *The defendant may, by a special requested instruction, call the trial court's attention to error in the charge, as well as omissions therefrom, and no other exceptions or objection to the court's charge shall be necessary to preserve any error reflected by any special requested instruction* which the trial court refuses.

TEX.CODE CRIM.PROC.ANN. (Vernon Supp.1987) (emphasis added). Hefner's requested instruction did not preserve error because it did not give the trial court an opportunity to rule on whether Hefner was entitled to an instruction on mistake of fact *regarding complainant's consent.* For this reason, any error in the charge regarding Hefner's belief that complainant consented is not reflected by Hefner's requested special instruction on mistake of fact, as required to preserve error under Article 36.15, set forth above.

We recognize the established rule that the trial court must charge the jury on any defensive theory raised by the evidence. *See Esparza v. State,* 520 S.W.2d 891, 892 (Tex.Crim.App.1975). However, the defendant must request a special instruction on the defensive theory if he wants such instruction to be included in the court's charge. *See* TEX.CODE CRIM.PROC. ANN. art. 36.15 (Vernon Supp.1987). Hefner did not request an instruction on the defensive theory of mistake of fact *regarding the complainant's consent,* but instead requested that a general explanation of the mistake of fact be included in the charge. A special instruction giving a general explanation of the law and failing to apply the law to the facts is improper. *See Beggs,* 597 S.W.2d 375. Therefore, the trial court properly denied Hefner's requested special instruction.

Hefner never informed the trial court that he was relying on a mistake of fact defense *relating to the issue of complainant's consent*. We refuse to hold that Hefner's requested instruction was sufficient to notify the trial court of the factual defensive theory Hefner was relying upon. The trial in the case at bar began on August 19, 1985, and did not conclude until August 30, 1985. Over thirty witnesses testified during the ten day trial. Hefner requested thirteen different special instructions. The trial court simply does not have the duty to recall ten days of testimony from over thirty witnesses and wade through all this evidence to decide if there is any evidence on *any* defensive theory Hefner raised at any time that might possibly be applicable to the law of mistake of fact.

Furthermore, to allow a general special instruction request, like Hefner's, to preserve error, would be opening the proverbial "floodgates of litigation." Defendants would be able to heap special instruction requests upon the trial court without disclosing the factual basis for their requests. Then, on appeal, defendants would be able to dramatically unveil the factual basis for their requested special instructions, and victoriously claim a new trial.

 Since Hefner is complaining of alleged error in the jury charge, we now move to an *Almanza* harm analysis. Hefner's requested special instruction was too general to preserve any error. Hence, Hefner has, in effect, levied no objection to the charge. An objection that is insufficient to preserve error is tantamount to no objection. *See Cisneros v. State*, 692 S.W.2d 78, 83 (Tex.Crim.App.1985); *Vaughn v. State*, 607 S.W.2d 914, 922 (Tex.Crim.App.1980). Since Hefner in effect failed to object, under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984), he must show "such harm that he 'has not had a fair and impartial trial'—in short 'egregious harm.'" The Court of Criminal Appeals in *Almanza* stated:

> ... the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.

*Almanza*, 686 S.W.2d at 171. The Court of Criminal Appeals in *Almanza* also stated:

> We hold that finding error in the court's charge to the jury begins—not ends—the inquiry; the next step is to make an evidentiary review, ... as well as a review of any other part of the record as a whole which may illuminate the *actual, not just theoretical, harm to the accused.*

*Almanza*, 686 S.W.2d at 174 (emphasis added).

We hold that even if Hefner had requested a correct special instruction on mistake of fact (i.e. an instruction that applied the law to the facts), he nonetheless was not entitled to such an instruction. Therefore, it was not error to omit such an instruction from the charge. Furthermore, if Hefner was entitled to an instruction on the mistake of fact defense, the omission of said instruction from the charge does not constitute egregious harm so as to require reversal. We discuss these alternative holdings separately.

 Putting aside the issue regarding Hefner's improper request for a special instruction on mistake of fact, Hefner nonetheless was not entitled to an instruction on the law of mistake of fact because under Texas Penal Code Section 8.02(a), the actor must have mistakenly formed a *reasonable belief* about a matter of fact that negates the kind of culpability required for commission of the offense. The key phrase of the above statute is "reasonable belief." "Reasonable belief" is defined as a "belief that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX.PENAL CODE ANN. § 1.07(a)(31) (Vernon 1974).

Although Hefner testified that on each occasion when funds were transferred into the law firm's operating account, he had no question in his mind that complainant understood and approved the transfers, Hefner's belief was not reasonable. Hefner's belief that the complainant consented to

the transfer of her money was an *unreasonable* belief that did not entitle Hefner to rely on the defense of mistake of fact. *See Smith v. State,* 689 S.W.2d 514, 515 (Tex. App.—Fort Worth 1985, no writ) ("mistake must be founded upon *reasonable* belief about the factual matter") (emphasis original); *Mata v. State,* 627 S.W.2d 838, 840 (Tex.App.—San Antonio 1982, no writ) (holding that appellant's belief that gun containing three live rounds of ammunition and three empty chambers would not discharge was not a "reasonable belief" as defined by Texas Penal Code Section 1.07(a)(31)).

The record reflects that Hefner has been practicing law for nineteen years. Hefner has been admitted to practice before the United States District Court for the Eastern District of Texas, the United States District Court for the Southern District of Texas, the United States District Court for the Western District of Texas, the United States District Court for the Northern District of Texas, the Fifth Circuit Court of Appeals, the United States Tax Court, and the United States Supreme Court. Hefner has known the complainant since "the late 60's or early 70's." The complainant has been admitted to psychiatric hospitals on at least six occasions, the most recent occasion being January 1984. The record reflects that Hefner was aware of the widowed complainant's emotional and psychiatric problems. In fact, Dr. Gordon testified that Hefner referred complainant to him for psychotherapy. Additional testimony adduced at trial showed that Hefner knew while he was representing the complainant that she was taking medication. Hefner's office manager testified that the complainant was confused and disoriented on several occasions when she came into Hefner's office.

Hefner, as complainant's attorney, was in a fiduciary relationship with complainant. The relationship between attorney and client has been held to be one of *uberrima fides. Smith v. Dean,* 240 S.W.2d 789, 791 (Tex.Civ.App.—Waco 1951, no writ). This has been described as: "The most abundant good faith; absolute and perfect candor or openness and honesty;

the absence of any concealment or deception, however slight." *State v. Baker,* 539 S.W.2d 367, 374 (Tex.Civ.App.—Austin 1976, no writ).

We hold that Hefner was not entitled to an instruction on the mistake of fact defense because his belief that the complainant consented was an *unreasonable* belief that an ordinary, prudent man acting in a fiduciary relationship would not have held. Again, we realize that a defendant is entitled to an instruction on any defensive theory raised by the evidence. *See Esparza,* 520 S.W.2d at 892. However, by the terms of the Texas Penal Code section 8.02(a), a defendant is entitled to an instruction on the mistake of fact defense only when there is evidence "that the actor through mistake formed a *reasonable belief* about a matter of fact...." TEX.PENAL CODE ANN. § 8.02 (Vernon 1974) (emphasis added); *see Smith,* 689 S.W.2d at 515; *Mata,* 627 S.W.2d at 840. Hefner's mistaken belief in the case at bar was not a "reasonable belief" as defined in Texas Penal Code section 1.07(a)(31). Since Hefner was not entitled to an instruction on mistake of fact, he cannot possibly claim "egregious harm" arising from the trial court's failure to include said instruction in the charge.

■ Alternatively, even if Hefner was entitled to an instruction on mistake of fact, the omission of said instruction did not constitute such "egregious harm" as to require reversal. *Almanza* directs this Court to look at the record as a whole and determine whether there is any *actual* harm to Hefner from the absence of a mistake of fact instruction in the charge. The court's charge set forth the elements of theft, and required that to reach a verdict of guilty, the jury find, beyond a reasonable doubt, that Hefner committed the offense of theft. The charge given by the court adequately protected Hefner's rights and did not egregiously harm Hefner or deprive him of a fair trial. Furthermore, the record viewed as a whole overwhelmingly supports the jury verdict. Therefore, even if Hefner was entitled to an instruction on mistake of fact, the omission of said

instruction does not constitute egregious harm.

In conclusion, we hold that: (1) Hefner has waived any error in the charge since his requested special instruction was improper and was too general to preserve error under Texas Code of Criminal Procedure Article 36.15; (2) Hefner was not entitled to an instruction on mistake of fact under Texas Penal Code section 8.02 since his mistaken belief was not a "reasonable belief" as defined in Texas Penal Code section 1.07(a)(31); and (3) assuming Hefner was entitled to an instruction on mistake of fact, Hefner levied what was tantamount to no objection, and was not egregiously harmed by the omission of said instruction from the charge. Hefner's tenth point of error is overruled.

In his eleventh point of error Hefner complains that the trial court erred in refusing to charge the jury on the defense of mistake of law. Hefner has failed to preserve this point of error for review. Hefner's requested special instruction regarding the defense of mistake of law, like his requested special instruction on the defense of mistake of fact, fails to apply the law to the present facts, and therefore fails to apprise the trial court of *what* mistake of law Hefner relied upon. Such a request is insufficient to preserve error. *See* TEX. CODE CRIM.PROC.ANN. § 36.15 (Vernon Supp.1987). Furthermore, the *record* before us fails to disclose any court opinion or statement by a public official which would have justified a reasonable belief by Hefner that his conduct was not criminal. Hence, mistake of law was not raised by the evidence before us. *See Austin v. State*, 541 S.W.2d 162, 166 (Tex.Crim.App. 1976).

■ Hefner's brief does not contain a citation to the record indicating where Hefner disclosed to the trial court the opinion or official statement on which he relied. If, however, Hefner did, in some portion of this nine volume statement of facts and one hundred and ninety-seven page transcript, cite the cases or statement upon which he relies, the evidence nonetheless does not support the submission of the mistake of law defense. The Texas Penal Code provides, in pertinent part:

§ 8.03. Mistake of Law

\* \* \* \* \* \*

(b) It is an affirmative defense to prosecution that the actor reasonably believed the conduct charged did not constitute a crime and that he acted in reasonable reliance upon:

(1) an official statement of the law contained in a written order or grant of permission by an administrative agency charged by law with responsibility for interpreting the law in question; or

(2) a written interpretation of the law contained in an opinion of a court of record or made by a public official charged by law with responsibility for interpreting the law in question.

Tex.Penal Code Ann. (Vernon 1974). Hefner argues in his appellant's brief that his charges to complainant were justified because he had a reasonable belief based upon courts' opinions that the order requiring complainant to deposit the $67,000 in the registry of the state court was void. Hefner also argues that he had a good faith belief based on courts' opinions that the state court's order substituting another attorney in his place was invalid. These beliefs are irrelevant to the case at bar. Hefner was charged with theft; that is the unlawful exercise of control over complainant's money without the effective consent of complainant with the intent to deprive complainant of her money. Hefner's subjective beliefs regarding the validity of the court's orders are simply of no importance in this prosecution for theft. Reliance by Hefner on a court's opinions nonetheless does not excuse Hefner's conduct as charged in the indictment. Hefner could not have formed a reasonable belief based on court's opinions or official statements that the conduct charged in the indictment was legal. Whether Hefner reasonably thought the orders were void is not the issue. Hefner was not entitled to an instruction on the mistake of law defense.

The Practice Commentary following Texas Penal Code section 8.03 gives examples

of situations in which the mistake of law defense could be properly invoked:

> Under the narrow exception of Subsections (b)(1) and (b)(2), a cafe owner prosecuted for selling beer for off-premises consumption could defend on the basis of a grant of permission from the Alcoholic Beverage Commission; and a business could defend against an antitrust prosecution on the basis of a court opinion declaring that the practice in question did not constitute a monopoly.

Searcy & Patterson, *Practice Commentary to Section 8.03*, 1 Tex.Penal Code Ann. 217, 220 (Vernon 1974). *Accord, Austin v. State*, 541 S.W.2d at 166. Clearly, Hefner's alleged mistake of law is not comparable to the above examples.

The trial court did not err in refusing to include Hefner's requested instruction on mistake of law in the charge because: (1) error was not preserved; (2) Hefner failed to inform the court which court opinions or official statements lead him to believe his conduct was not criminal; and (3) the evidence in the present case does not support the submission of a special instruction on the mistake of law defense. Hefner's eleventh point of error is overruled.

■ In his twelfth point of error Hefner argues that the trial court erred "in refusing to give the jury the proper and timely request of instruction of good faith, argument or extension, modification or reversal of existing law." Hefner claims that he is entitled to such an instruction under Texas Code of Professional Responsibility Rule 7–102(A)(2). This rule provides:

> DR 7–102. Representing a Client Within the Bounds of the Law.
>
> (A) In his representation of a client, a lawyer shall not:
>
> * * * * * *
>
> (2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

SUPREME COURT OF TEXAS, RULES GOVERNING THE STATE BAR OF TEXAS art. XII, § 8 (Code of Professional Responsibility) DR–7–102(A)(2) (1973) [hereinafter cited as Texas Code of Professional Responsibility]. Hefner cites no authority for his proposition that he is entitled to have the jury in a criminal prosecution instructed on a disciplinary rule promulgated by the Texas Supreme Court. We are unaware of the existence of any authority supporting Hefner's proposition and our research has revealed no such authority. We hold that the disciplinary rules have no bearing on the present case, a criminal prosecution for theft. Whether Hefner was pursuing valid, good faith claims on complainant's behalf or whether Hefner was pursuing bogus claims on complainant's behalf, has no effect on this prosecution for theft. Hefner's twelfth point of error is overruled.

In his thirteenth point of error, Hefner argues that the trial court erred in refusing to instruct the jury on Texas Code of Professional Responsibility DR 7–101(A)(2) which provides:

> DR 7–101. Representing a Client Zealously.
>
> (A) A lawyer shall not intentionally:
>
> * * * * * *
>
> (2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.

Tex.Code of Professional Responsibility (Vernon 1973). Hefner again cites no authority in support of this contention. For the reasons previously discussed in Hefner's twelfth point of error, Hefner's thirteenth point of error is overruled.

■ Finally, we point out that although we have addressed all of Hefner's points of error, Hefner's first, third, fourth, fifth, seventh, eighth, twelfth, thirteenth and fourteenth points of error have been waived because they do not comply with Texas Rule of Appellate Procedure 74(f). Rule 74(f) was effective prior to the date Hefner filed his appellant's brief. This rule requires that in an appellate brief, the

argument in support of a point of error *shall* include "such discussion of the ... authorities relied upon as may be requisite to maintain the point at issue." The arguments contained in Hefner's brief in support of his first, fifth, seventh, eighth, twelfth, thirteenth and fourteenth points of error do not contain any citations to any cases. Hefner's argument in support of his third and fourth points of error contain citations to only single noncontrolling cases. We therefore hold, in the alternative, that Hefner waived the above listed points of error.

The judgment of the trial court is modified to the extent that Hefner is required to pay restitution in the amount of $20,000 as a condition of his probation. In all other respects, the judgment of the trial court is affirmed.

ROWE, Justice, dissenting.

I respectfully dissent. I would hold not only that Hefner adequately preserved error with respect to his mistake of fact defense but also that the trial court erred in failing to include in its charge an appropriate instruction on this defensive issue. Accordingly, I would reverse the trial court's judgment of conviction and remand the cause for a new trial.

On appeal, Hefner contends that he was harmed by the trial court's denial of his mistake of fact defense. Hefner testified in detail concerning each transfer of funds and expressed his belief that each was authorized by complainant. Prior to submission of the charge, Hefner requested a special instruction tracking the language of TEX.PENAL CODE ANN. § 8.02 (Vernon 1974) which authorizes the mistake of fact defense. Upon examination of those instructions proposed by the court for submission to the jury, Hefner objected to the omission of any charge on mistake of fact.

In its opinion, the majority has characterized the "primary fact issue" litigated at trial as being "whether complainant effectively consented to the transfer[s]." Taking the stand in his own defense, Hefner testified, at length, separately and precisely with respect to each transfer, that there

was no question in his mind but that complainant understood and approved each transfer when made. Standing alone, this evidentiary litany regarding Hefner's "belief" that he had complainant's valid consent to make each transfer was a signal to the trial judge that such belief had a critical impact on Hefner's culpability. *See Knowles v. State*, 672 S.W.2d 478, 480 (Tex.Crim.App.1984) (reversing the conviction and remanding the cause for another trial because of the trial court's failure to submit a mistake of fact defense which negated defendant's culpability in a theft prosecution when raised solely by testimony of defendant). Clearly, if Hefner was reasonable in entertaining such a belief but was nonetheless mistaken, he lacked the mens rea to be guilty of theft. Thus, through his own highlighting testimony on the subject, an exact basis for Hefner's section 8.02 defense was clearly indicated.

While the majority contends that the instruction which Hefner tendered was defective, it was at least sufficient on its face to call the trial court's attention to Hefner's right to a *proper* charge on the defensive issue therein addressed. *Williams v. State*, 630 S.W.2d 640, 643 (Tex.Crim.App. 1982). Hefner is not burdened with the same mandate that is placed upon a trial judge, which, as the majority notes, is to properly apply the law to the particular facts presented at trial. All Hefner was obliged to do was to call the omitted defense to the trial judge's attention with such particularity as to enable the judge to perceive and cure the error. *Regittano v. State*, 96 Tex.Crim. 477, 257 S.W. 906, 908 (1922). The degree of specificity required of the objection will of necessity vary with the context in which it is presented. Within the factual setting presented by this case, I am persuaded that Hefner's requested instruction and his objection to the charge, coupled with his testimony concerning his belief that complainant had validly consented, were sufficient to call the omitted mistake of fact defense to the attention of the trial judge and thus preserve for appellate review the error in question.

Further, upon thorough review of the trial record, I am convinced, contrary to the holding of the majority, that Hefner's belief in the validity of the complainant's consent was not unreasonable as a matter of law. Regardless of all conflicting and contradicted testimony, Hefner's assertions standing alone have evidentiary weight to support his mistake of fact defense. *See Campbell v. State,* 614 S.W.2d 443, 445 (Tex.Crim.App.1981); *Thompson v. State,* 521 S.W.2d 621, 624 (Tex.Crim.App.1974). Accordingly, I would let the trier of facts determine the disputed matter of whether Hefner genuinely held that professed belief which would exculpate him.

I agree with the majority that Hefner is not entitled to an acquittal for insufficient evidence. He is entitled, however, to a new trial on grounds that the trial judge committed reversible error by failing to include in the charge, as duly requested by Hefner, an appropriate instruction covering that mistake of fact defense raised by the evidence. *See Jackson v. State,* 646 S.W.2d 225, 227 (Tex.Crim.App.1983) (reversing the conviction and remanding the cause for another trial because of the trial court's failure to submit a mistake of fact defense in its charge when raised by evidence in theft prosecution and called to the court's attention by a sufficient, albeit not technically correct, instruction). Accordingly, I would reverse the conviction and remand the cause for a new trial.